UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

EMA FINANCIAL, LLC, a Delaware Limited Liability
Company,

                       Plaintiff,

       - against -

5BARZ INTERNATIONAL, INC., a Nevada Corporation,
5BARZ AG, a Swiss Corporation, CELLYNX GROUP,
INC., a Nevada Corporation, 5BARZ INDIA PRIVATE
LIMITED, an Indian Corporation, and 5BARZ
INTERNATIONAL SA DE CV, a Mexican Corporation.

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Case No.: 18-cv-4995

**COMPLAINT**

       Plaintiff, EMA Financial, LLC ("EMA" or "plaintiff"), by its undersigned attorneys, for its complaint, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

       1.    This is an action for specific performance, a permanent injunction, breach of contract, and related relief arising as the result of defendants' conduct in connection with certain agreements to purchase securities, a related convertible note agreement, and a settlement agreement. After entering into negotiated, arms-length agreements, for which defendant 5Barz International Inc. ("BARZ" or "defendant") received valuable consideration, BARZ breached the agreements, in numerous ways, including, *inter alia*, by: (i) failing to honor EMA's notices of conversion, (ii) failing to establish, maintain and increase a share reserve, (iii) failing to timely submit their required SEC filings, (iv) and by admitting in public filings that it is insolvent and unable to pay its debts as they come due. Accordingly, plaintiff seeks the relief set forth herein.

## PARTIES

2.     Plaintiff EMA Financial, LLC ("EMA" or "plaintiff") is a limited liability company duly organized under the laws of the State of Delaware and having a place of business located at 40 Wall Street, New York, New York.

3.     The members of EMA reside in New York and Delaware.

4.      For purposes of diversity, EMA is a citizen of New York and Delaware.

5.     Upon information and belief, Defendant 5Barz International Inc. ("BARZ") is a corporation organized and existing under the laws of the State of Nevada having its principal place of business located at 600 Brickell Avenue, Suite 1502, Miami, Florida 33131.

6.     For purposes of diversity, BARZ is a citizen of Nevada.

7.     BARZ is a publicly traded company, trading under the symbol "BARZ."

8.     Upon information and belief, 5BARZ AG ("AG") is a corporation organized under the laws of Switzerland, having a place of business at 600 Brickell Avenue, Suite 1502, Miami, Florida 33131.

9.     Upon information and belief, AG is a subsidiary of BARZ.

10.     For purposes of diversity, AG is a citizen of Switzerland.

11.     Upon information and belief, Cellynx Group, Inc. ("Cellynx") is a corporation organized and existing under the laws of the State of Nevada having its principal place of business located at 600 Brickell Avenue, Suite 1502, Miami, Florida 33131.

12.     Upon information and belief, Cellynx is a subsidiary of BARZ.

13.     For purposes of diversity, Cellynx is a citizen of Nevada.

14.      Upon information and belief, 5BARZ India Private Limited ("BARZ India") is a corporation organized under the laws of India having a place of business at 600 Brickell Avenue, Suite 1502, Miami, Florida 33131.

15.      Upon information and belief, BARZ India is a subsidiary of BARZ.

16.      For purposes of diversity, BARZ India is a citizen of India.

17.      Upon information and belief, 5BARZ International SA DE CV ("BARZ Mexico") is a corporation organized under the laws of Mexico having a place of business at 600 Brickell Avenue, Suite 1502, Miami, Florida 33131.

18.      Upon information and belief, BARZ Mexico is a subsidiary of BARZ.

19.      For purposes of diversity, BARZ Mexico is a citizen of Mexico.

20.      No member of EMA is a citizen of Nevada, Switzerland, or India or Mexico.

21.      There is therefore complete diversity of citizenship.

## JURISDICTION AND VENUE

22.      The Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(2) in that the action is between citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

23.      This Court has supplemental jurisdiction of Plaintiff's various state law claims pursuant to 28 U.S.C. Section 1367(a).

24.      Venue is proper in this District pursuant to 27 U.S.C. §1391(a), in that it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the property which is subject to this action is situated.

25.      Additionally, in the relevant agreements, defendants consented to jurisdiction and venue in the Southern District of New York.

## FACT COMMON TO ALL CLAIMS FOR RELIEF

26.     On or about July 24, 2015, after arm's-length negotiations, BARZ executed a Securities Purchase Agreement (the "SPA") and issued a Convertible Note to EMA (the "Note") in the amount of $110,000.  A true and correct copy of the Note is attached hereto as Exhibit A. A true and correct copy of the SPA is annexed as Exhibit B.

27.     The Note provides that EMA, at any time after the Issue Date of the Note, has the right to convert all or part of the Note into shares of BARZ common stock (the "Common Stock"). Specifically, §1.1 of the Note provides in pertinent part:

> The Holder shall have the right, in its sole and absolute discretion, at any time and from time to time to convert all or any part of the outstanding amount due under this Note into fully paid and non-assessable shares of Common Stock.

Ex. A at 1.1.

28.     Likewise, 1.4(a) of the Note provides that: "Subject to Section 1.1, this Note may be converted by the Holder in whole or in part at any time and from time to time after the Issue Date, by submitting to the Borrower a Notice of Conversion…"

29.     As §1.2(a) of the Note dictates: "The conversion price hereunder (the "Conversion Price") shall equal the lower of: (i) the closing sale price of the Common Stock on the Principal Market on the Trading Day immediately preceding the Closing Date, and (ii) 58% of the lowest sale price for the Common Stock on the Principal Market but in no event at a price lower than $0.00001 (as appropriately, and equitably adjusted for stock splits, stock dividends, and similar events) during the twenty-five  (25) consecutive  Trading Days  immediately preceding the Conversion Date"

30.     Further, under §1.4(d) of the Note: "Upon receipt by the Borrower from the Holder of a facsimile transmission or e-mail (or other reasonable means of communication) of a Notice of

Conversion meeting the requirements for conversion as provided in this Section 1.4, the Borrower shall issue and deliver or cause to be issued and delivered to or upon the order of the Holder certificates for the Common Stock issuable upon such conversion within three (3) business days after such receipt (the "Deadline")."

31.     In order to ensure that sufficient shares are available for conversion, §1.3 of the Note provides that:

> The Borrower covenants that the Borrower will at all times while this Note is outstanding reserve from its authorized and unissued Common Stock a sufficient number of shares, free from preemptive rights, to provide for the issuance of Common Stock upon the full conversion of this Note. The Borrower is required at all times to have authorized and reserved three (3) times the number of shares that is actually issuable upon full conversion of this Note (based on the Conversion Price of the Notes in effect from time to time)(the "Reserved Amount"). Initially, the Company will instruct the Transfer Agent to reserve four million, three hundred thousand (4,300,000) shares of common stock in the name of the Holder for issuance upon conversion hereof. The Borrower represents that upon issuance, such shares will be duly and validly issued, fully paid and non-assessable.

32.     In order to ensure that EMA at all times has shares reserved in connection with the outstanding Note §5 of the SPA states that:

> In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement a fully executed Irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note) signed by the successor transfer agent to Company and the Company.

33.     The SPA requires that the Company must maintain its listing on the OTC Markets and remain current in its reporting obligations. Under §4(e) of the SPA the Company must: comply in all respects with the Company's reporting, filing and other obligations."

34.     Page 1 of the Note provides that the Company must repay the unpaid interest and principal balance of the Note by July 24, 2016.

## BARZ BREACHES THE AGREEMENTS

35.     On August 3, 2018 BARZ failed to file a Form 8-K in connection in accordance with Section 4(h) of the SPA.

36.     On December 9, 2015, in accordance with Section 1.3 of the Note EMA requested that BARZ increase the number of shares in the reserve.

37.     BARZ failed to honor this request.  EMA subsequently discovered that, in further breach of the Note and SPA, BARZ had switched transfer agents but failed to provide EMA with fully executed Irrevocable Transfer Agent Instructions signed by the successor transfer agent, and failed to establish the required reserve.

38.     As a result, on or about December 23, 2015, EMA sent BARZ a default notice.

39.     On February 2, 2016 EMA submitted a notice of conversion, seeking to convert the Note into shares of BARZ stock.

40.     BARZ failed to deliver the shares of stock by the three day deadline provided in the relevant agreements.

41.     On or about July 24, 2016, the Note matured, but BARZ failed to pay or otherwise satisfy the terms of the Note.

42.     On or about August 31, 2016, the parties entered into a settlement agreement (the "Settlement Agreement").  A copy of the Settlement Agreement is annexed hereto as Exhibit C and incorporated by reference.

43.     The Settlement Agreement provides, *inter alia,* that BARZ is in default of the Note and SPA, and provides for the aggregate payment of the sum of $188,500.00 to EMA over an approximate 18 week period.

44.     In accordance with the terms of the Settlement Agreement, BARZ was required to make monthly payments in accordance with the payment schedule set forth in the Settlement Agreement. As per the Settlement Agreement, EMA was entitled to receive either cash or shares of BARZ common stock representing the amounts owed under each installment payment.

45.     Although the Settlement Agreement was signed on August 31, 2016, BARZ failed to timely make the first installment payment due the very next day, on September 1, 2016.

46.     Likewise, BARZ failed to timely make the second payment due under the Settlement Agreement, which was due 10 days later, on September 10, 2016.

47.      BARZ also failed to timely make the third payment due under the Settlement Agreement, due on October 10, 2016.

48.     On October 31, 2016, EMA requested that it be provided with shares of BARZ stock representing the amounts owed to EMA as of that date as per the Settlement Agreement. BARZ once again failed to provide these shares.

49.     On November 8, 2016, BARZ issued a limited number of shares in order to satisfy part of its obligations due under the first installment payment set forth in the Settlement Agreement, but failed to provide the balance amount of shares requested by EMA in order to satisfy even the first required installment payment.

50.      On November 9, 2016, EMA requested additional shares, this time to satisfy the shares owed to it to date under the Settlement Agreement. No shares were delivered to EMA. 51. Once again, on November 10, 2016, BARZ was obligated to make the fourth payment due under the Settlement Agreement, but failed to do so.

51.     On or about November 19, 2016, BARZ became delinquent with its required filings with the Securities and Exchange Commission, thereby breaching Section 3.9 of the Note, which

provides for a breach in the event that: "The Borrower shall fail to comply in any material respect with the reporting requirements of the Exchange Act".

52.     On December 10, 2016, the fifth installment payment due under the terms of the Note came due.  Once again, BARZ failed to make the fifth installment payment, and otherwise failed to satisfy its obligations under the terms of the Settlement Agreement.

53.     On December 12, 2016, EMAagain requested that BARZ meet its obligation under the Settlement Agreement and provide it with additional shares.  This request was ignored.

54.     On December 25, 2016, BARZ called EMAto say that there would be no shares available for issuance until after January 1, 2017.

55.     On January 1, 2017 the defendant sent an email to the plaintiff stating that they would be providing plaintiff with shares. No shares were delivered.

56.     On January 10, 2017, the sixth (and what should have been the final) installment payment due under the Settlement Agreement came due, and once again, BARZ failed to pay or otherwise satisfy its obligations to make the sixth installment payment.

57.      On or about January 17, 2018 BARZ stated that they would be providing EMA with shares.

58.     On January 20 2017, no shares had been delivered to EMA. BARZ indicated that they shares would be delivered by January 23, 2017.

59.     On or about January 23, 2017, BARZ failed to deliver the shares.

60.     On or about January 25, 2017—several months after it was due— BARZ provided additional shares numbering less than the amount owed for the second installment payment.

61.     On February 16, 2017 EMA again requested that BARZ provide it with additional shares. 63. On February 21, 2017, BARZ again promised to deliver additional shares that week.

62.     Despite BARZ's promises, no shares were delivered.

63.     On or about March 11, 2017, BARZ again promised to provide additional shares that very same day.

64.     Once again, no shares were delivered, despite BARZ's promises.

65.     On or about March 13, 2017, EMA inquired about the status of the shares and defendant stated that shares would not be delivered as the transfer agent was owed money.

66.     On March 14, 2017, EMA made an additional request for the delivery of shares.

67.     On March 15, 2017, the transfer agent for BARZ indicated that it could not deliver any shares because BARZ was in arrears.

68.     On or about March 23, 2017 BARZ delivered a limited amount of shares to EMA.

69.     On or about March 31, 2017 BARZ filed a form NT-10K and went delinquent with its public filings thereafter, and has been delinquent since that time.

70.     On September 13, 2017 EMA again requested that BARZ deliver shares in order to meet its obligations.

71.     On September 19, 2017, BARZ delivered a limited amount of shares to EMA.

72.     On October 17, 2017, EMA again requested that BARZ deliver shares in order to meet its obligations under the various agreements.

73.     On October 20, 2017, BARZ claimed that his attorney, Mark Basile, had advised him of certain "laws" of which he was previously not aware relating to the SPA, and Note.

74.     In various emails sent on October 26, 2017 and October 30, 2017, BARZ claimed that the agreements with BARZ were invalid, that the Note was not a "valid security," and was "illegal" and could not be enforced.

75.     BARZ thereafter refused to meet its obligations under the various agreements, and instead, falsely claimed that the agreements were illegal and unenforceable.

76.     The Settlement Agreement provides that:

In the event of any breach or default by the Borrower of the terms of this Agreement (including but not limited to the Borrower's failure to issue enough shares so that the Net Sales Proceeds equal the full Payment Amount prior to the next applicable Payment Date), the release set forth herein shall automatically be deemed ineffective and the Lender shall automatically and without further action be entitled to all its rights and preferences under this Agreement, the Purchase Agreement and the Note provided that the Borrower is entitled to credit for all amounts received by the Lender under this Agreement under the Note.

77.     Accordingly, EMA is entitled to enforce each of its rights under the Note and SPA.

78.     Section 3.2 of the Note provides for a breach in the event that:

The Borrower fails to issue shares of Common Stock to the Holder (or announces or threatens in writing that it will not honor its obligation to do so at any time following the execution hereof or) upon exercise by the Holder of the conversion rights of the Holder in accordance with the terms of this Note, fails to transfer or cause its transfer agent to transfer (issue) (electronically or in certificated form) any certificate for shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, the Borrower directs its transfer agent not to transfer or delays, impairs, and/or hinders its transfer agent  in transferring (or  issuing) (electronically or  in certificated  form) any certificate for shares of Common Stock to be issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note, or fails to remove (or directs its transfer agent  not to  remove or impairs, delays, and/or hinders its transfer agent from removing) any restrictive  legend (or to withdraw any stop transfer instructions in respect thereof) on any certificate for any shares of Common Stock issued to the Holder upon conversion of or otherwise pursuant to this Note as and when required by this Note (or makes any written announcement, statement or threat that it does not intend to honor the obligations described in this paragraph)… It is an obligation of the Borrower to remain current in its obligations to its transfer agent. It shall be an event of default of this Note, if a conversion of this Note is delayed, hindered or frustrated due to a balance owed by the Borrower to its transfer agent…

79.     Likewise, Section 5 of the SPA provides that

Upon receipt of a duly executed Notice of Conversion, the Company shall issue irrevocable instructions to its transfer agent to issue certificates, registered in the name of the Purchaser or its nominee, for the Conversion Shares in such amounts as specified from time to time by the Purchaser to the Company upon conversion of the Note, or any part thereof, in accordance with the terms thereof (the "Irrevocable Transfer Agent Instructions"). In the event that the Company proposes to replace its transfer agent, the Company shall provide, prior to the effective date of such replacement, a fully executed irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to this Agreement and the Securities (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount (as defined in the Note)) signed by the successor transfer agent to Company and the Company.

80.     Similarly, 3.15 of the Note provides that:

In the event that the Borrower proposes to replace its transfer agent, the Borrower fails to provide, prior to the effective date of such replacement, a fully executed Irrevocable Transfer Agent Instructions in a form as initially delivered pursuant to the Purchase Agreement (including but not limited to the provision to irrevocably reserve shares of Common Stock in the Reserved Amount) signed by the successor transfer agent to Borrower and the Borrower.

81.     Further the Section 3.15 of the Note provides that it shall be considered an Event of Default if: "The Borrower or any subsidiary of the Borrower shall make an assignment for the benefit of creditors, or apply for or consent to the appointment of a receiver or trustee for it or for a substantial part of its property or business, or such a receiver or trustee shall otherwise be appointed."

82.     On August 4, 2016, BARZ was named as a defendant in an action in the United States District Court, Southern District of New, entitled *Union Capital LLC v 5BARZ International Inc.,* Case No. 16-cv-096203, based upon BARZ'S default under a convertible note. On May 9, 2017, the Court entered a judgment against BARZ in the sum $48,413.59.  By Order dated July 26, 2017, the Court granted a motion to place BARZ into receivership. Accordingly, BARZ

breached section 3.5 of the Note, which provides for a breach in the event that a receiver is appointed.

83.     Additionally, Section 3.6 of the Note states that it shall be an Event of Default if:

> Any money judgment, writ or similar process shall be entered or filed against the Borrower or any subsidiary of the Borrower or any of its property or other assets for more than $50,000.00, and shall remain unvacated, unbonded or unstayed for a period of twenty (20) days unless otherwise consented to by the Holder, which consent will not be unreasonably withheld.

84.     On December 16, 2016, a judgment was entered against BARZ for the sum of $130,000.00 in the matter known as *Assured Wireless International v 5BARZ International Inc*., Superior Court of California, Case No. 37-2015-12766.  Accordingly, BARZ breached Section 3.6 of the Note which provides for a breach in the event a judgment in the sum of $50,000.00 or more is entered against it, and uncured for more than 20 days.

85.     Each of these lawsuits, judgments, and the receivership triggered an event of default under the terms of the Note. Additionally, in the Form 10-Q, filed with the SEC for the quarterly period ending June 30, 2016,  BARZ admitted that it is likely insolvent and noted as follows:

> The Company incurred losses of $3,538,456 and $5,319,659 during the six months ended June 30, 2016 and 2015 respectively. Cash used in operating activities was $2,455,791 and $1,855,745 for the six months ended June 30, 2016 and 2015 respectively. The Company is seeking additional sources of equity or debt financing, and there is no assurance these activities will be successful. These factors raise substantial doubt about the Company's ability to continue as a going concern and the Company's continued existence is dependent upon adequate additional financing being raised …

86.     Accordingly, based upon its insolvency, BARZ is in breach of Section 3.7 of the Note which provides for a breach in the event of "Bankruptcy, insolvency, reorganization…" Likewise, BARZ breached Section 3(x) of the SPA that provides that: "the Company (after giving effect to the transactions contemplated by this Agreement) is solvent…currently  the  Company

has no information that would lead it to reasonably conclude that the Company, could not, after giving effect to the transaction contemplated by this Agreement, have the ability to, nor does it intend to take any action that would impair its ability to, pay its debts from time to time incurred in connection therewith as such debts mature."

87.     Section 3.3 and 3.4 of the Note further provide for an event of default for each breach of a covenant, representation, or warranty made by BARZ in connection with the Agreements.

88.     Based on the foregoing events, BARZ's failure to honor EMA's Notices of Conversion and other actions and omissions has given rise to one or more "Event of Default" pursuant to the terms the Note. In addition thereto, BARZ's conduct has caused multiple "Events of Default" to occur.

89.     Section 8 of the Note outlines the negotiated-for and agreed-upon remedies for the differing Events of Default.  Among other things, EMA is permitted to enforce any and all of plaintiff's rights under the Note and SPA, or otherwise as permitted by law.92. Page 1 of the Note provides that: "Any amount of principal or interest on this Note which is not paid when due shall bear interest at the rate of twenty-four (24%) per annum from the due date thereof until the same is paid ("Default Interest")."

90.     Due to BARZ's persistent and willful failure to remedy its various breaches, as of filing the instant action, default interest has been accruing at a rate of 24%.

91.      Section 3.16 of the Note provides that, in the event of default, "all other amounts payable hereunder shall immediately become due and payable, all without demand, presentment or notice, all of which hereby are expressly waived, together with all costs, including, without

limitation, legal fees and expenses, of collection, and the Holder shall be entitled to exercise all other rights and remedies available at law or in equity."

92.     EMA has been, and continues to be, irreparably harmed by BARZ's failure to honor the Notices of Conversion, failure to maintain a reserve, and failure to remain current in its required SEC filings.

93.     Damages from BARZ's failure to deliver the shares are inherently uncertain and difficult to calculate.   Since the parties entered in the Note in July of 2015, BARZ's Stock price has ranged from a high of 0.2 on August 3, 2015 to a low of 0.0201 on September 11, 2017 per share.

94.     Thus, the timing of conversions and sale of stock would be essential to the determination of damages.  Because it is impossible to discern with any accuracy precisely when EMA would have sold the converted shares, and how many it would sell had the conversion been honored, calculating its losses is impossible.

95.      All notices and prerequisites to bringing this action, if any, including notices of default, have been complied with or were waived.

**FIRST CLAIM FOR RELIEF**
**(<u>SPECIFIC PERFORMANCE</u>)**

96.     EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

97.     Pursuant to the Note, SPA, and related agreements, BARZ is obligated to deliver shares of BARZ Common Stock pursuant to the agreement's payment schedule, as well as to provide with the transfer agent the necessary board resolutions sufficient to enable EMA to sell the shares publicly without restriction.

98.     Despite its obligation to do so, BARZ has refused and failed to deliver said shares of stock to EMA.

99.     BARZ has further failed to establish and increase the share reserve as required by the various agreements between the parties.

100.    As a result of such failure and refusal by BARZ, EMA has suffered damages.

101.     EMA has no adequate remedy at law.

102.    In the absence of injunctive relief and specific performance, EMA will suffer irreparable harm.

103.    EMA requests, therefore, that the Court enter an order requiring BARZ to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to EMA the shares of its Common Stock pursuant to each notice and Notice of Conversion  submitted, and to establish and increase the share reserve, as well as to provide EMA with the necessary resolutions, become current in its require SEC filings, and to take whatever steps necessary (as per the terms of the agreement), sufficient to enable EMA to sell the shares publicly without restriction.

## SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

104.    EMA realleges and incorporates by reference each and every allegation contained in all preceding paragraphs of this Complaint as if fully set forth herein.

105.    The Note and SPA, are valid and binding agreements.

106.     As set forth more fully above, BARZ breached the agreements. BARZ's numerous breaches of the agreement include, but are not limited to:

(i)      failing to honor the Notices of Conversion submitted; and

(ii)     failing to make timely filings with the SEC; and

(iii)    changing transfer agents, and failing to establish the share reserve; and

(iv)    its failure to honor of the terms, conditions, representations and warranties of the SPA and Note;

(v)     its default under the terms of the settlement agreement; and

(vi)    admitting in writing that it is insolvent and unable to pay its debts as they mature, entry of judgments against it, and being placed into receivership;

107.    BARZ's conduct constitutes a breach of, and default under, the terms of the Note, SPA and related agreements.

108.    EMA has performed all obligations of the relevant agreements that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

109.    BARZ's breach and default are governed by New York law under the terms of the Note.

110.    EMA is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of principal in the sum $110,000.00, including without limitation the balance of any portion of the Note that ultimately is not converted into shares, along with default interest, liquidated damages, and damages as provided for in the Note and by law.

**THIRD CLAIM FOR RELIEF**
**(PERMANENT INJUNCTION)**

111.    EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

112.    §4.10 of the Note provides:

Borrower acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Borrower of the provisions of this Note, that the Holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required.

113.    Pursuant to its obligations under the relevant agreements, BARZ is obligated to deliver shares of its Common Stock, along with the necessary resolutions and acceptance of the legal opinions furnished by EMA, sufficient to enable EMA to sell the shares publicly without restriction.

114.    Despite its obligation to do so, BARZ has failed and refused to deliver said shares of stock to EMA as required by each of the Notice of Conversion and requests for shares under the settlement agreement.

115.    Though required to under the terms of the Note and SPA, BARZ has failed to filed the required documents with the SEC.

116.    As a result of such refusal by BARZ, EMA has suffered damages.

117.    EMA has no adequate remedy at law.

118.     In the absence of injunctive relief, EMA will suffer irreparable harm.

119.    Additionally, BARZ consented to an injunction when entering into the Note and SPA.

120.     EMA requests, therefore, that the Court enter an order enjoining and requiring BARZ to deliver the shares of stock as called for in the relevant agreements in response to the Notice of Conversion, and requests for shares that was sent and to honor future conversion notices.

**FOURTH CLAIM FOR RELIEF**
**(COSTS, EXPENSES & ATTORNEYS FEES)**

17

121.    EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

122.    In accordance with the agreements between the parties, BARZ agreed to pay all costs and expenses, including reasonable attorneys' fees and expenses, incurred by EMA in collecting any amount under the Note or breach of the Agreements.

123.    Section 4.5 of the Note states, "If default is made in the payment of this Note, the Borrower shall pay the Holder hereof costs of collection, including reasonable attorneys' fees."

124.    Therefore, EMA is entitled to an award against BARZ for costs and expenses incurred in the prosecution of this lawsuit, including reasonable legal fees.

**FIFTH CLAIM FOR RELIEF**
**(BREACH OF THE SETTLEMENT AGREEMENT-PLEAD IN THE**
**ALTERNATIVE)**

125.    EMA realleges and incorporates by reference each and every allegation contained in each preceding paragraph of this Complaint as if fully set forth herein.

126.    As set forth above, EMA and BARZ entered into the Settlement Agreement.

127.    The Settlement Agreement is a valid and binding agreement.

128.    As set forth more fully above, BARZ breached the agreement.

129.    Among other things, the Settlement Agreement provides that BARZ agreed to pay EMA the sum of $188,500.00 over a period of approximately 18 weeks.

130.    BARZ failed to make the payments called for in the Settlement Agreement, and thus breached the Settlement Agreement.

131.    EMA has performed all obligations of the Settlement Agreement that were its obligation to perform except for those obligations that it could not perform because of defendant's breaches herein.

18

132.    EMA is therefore entitled to an award of damages in an amount to be determined at trial but in any event in excess of $188,500.00, less any payments made, in addition to all other amounts otherwise due under the Note.

## CLAIM FOR RELIEF

**WHEREFORE**, Plaintiff EMA seeks judgment against Defendants as follows:

i.    On the First Claim for Relief, EMA requests that the Court enter an Order requiring Defendant to specifically perform the relevant agreements, including the SPA, Note, and letter to transfer agent, and to deliver immediately to shares of its Common Stock pursuant to each Notice of Conversion, and share requests, file the necessary filings in order to become current in their required SEC filings, and provide the necessary resolutions and acceptance of the legal opinions furnished by EMA, sufficient to enable EMA to sell the shares publicly without restriction, and to establish and increase its shares reserve.

ii.    On all Second Claim for Relief, for damages in an amount to be determined, but in any event in excess of One Hundred and Ten Thousand Dollars ($110,000.00); and

iii.    On the Third Claim for Relief, the issuance of an injunction enjoining and requiring Defendant to deliver the shares of stock as called for in the relevant agreements in response to the Notice of Conversion that was sent; and

iv.    On the Fourth Claim for Relief for an award of EMA's costs and expenses in prosecuting this action, including reasonable legal fees;

v.    On the Fifth claim for Relief, awarding damaged of $188, 500.00 in addition to all other amounts otherwise due under the Note;

vi.    On all Claims for Relief, for interest, attorneys' fees and the costs and disbursements of this action; and

vii.      For such other further relief as the Court may deem just, proper, and in the interest

of justice.

Dated: June 5, 2018
         New York, New York

                                  LAW OFFICE OF JEFFREY FLEISCHMANN PC
                                  By: /s/Jeffrey Fleischmann
                                  Jeffrey Fleischmann, Esq.

                                  *Attorneys for Plaintiff EMA Financial, LLC*

                                  150 Broadway, Suite 900
                                  New York, N.Y. 10038
                                  Tel. (646) 657-9623
                                  Fax (646) 351-0694
                                  jf@lawjf.com